HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CABELA'S RETAIL, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>HAWKS PRAIRIE INVESTMENT, LLC,<br><br>                    Defendant. | No.  11-cv-5973-RBL<br><br>(Dkt. #104, 131) |

In its previous order, the Court concluded that Cabela's had breached ¶ 8 of the Memorandum of Agreements, the radius restriction, by opening the Tulalip store within 5 years of the Lacey store.  (Order, Dkt. #138.)  The Order requested additional briefing on the issues of standing and remedies, issues which were heard in oral argument.  Before the Court are these two issues (remaining from Hawks Prairie's Motion for Summary Judgment (Dkt. #104)).

At oral argument, an issue underlying standing and remedies came to the forefront.  In its bankruptcy settlement, Hawks Prairie transferred the Lacey property to Homestreet, which then sold the property to a new developer, Wig Properties.  The question of what rights were transferred to Wig underlies all others.

Order - 1

Cabela's argues that the Memorandum of Agreements and all rights and obligations accompanying that document now lie with Wig. The bill of sale from Homestreet to Wig provides that "Seller does hereby [convey] . . . the agreements recorded in the real property records of Thurston County, Washington as follows: (i) Memorandum of Agreements . . . ." (Hepburn Decl., Ex. A at 1–2, Dkt. #151.) If Cabela's is correct, and all rights and obligations belong to Wig, then Hawks Prairie has no standing to bring their counterclaims. Indeed, allowing such claims would expose Cabela's to multiple claims for breach of the same contract—one from Hawks Prairie and one from Wig. This cannot be the case.

In contrast, Hawks Prairie argues that it continues to hold the rights and obligations outlined in the Memorandum of Agreements. In the bill of sale to Homestreet, Hawks Prairie transferred the Memorandum of Agreements, "EXCEPT the Cabela's Contract and the Cabela's Contract Addendum as referenced in the Settlement and Sale Agreement which is part of the Cabela's litigation retained by the Seller." (Bill of Sale ¶ (i), Dkt. #147-2 (emphasis in original)). Similarly, the settlement agreement between Hawks Prairie and Homestreet carves out the "Cabela's Litigation." (Settlement Agreement at 6, Dkt. #147-1.) The settlement states that "Hawks Prairie and Homestreet are defending the Cabela's Litigation, and if they prevail Cabela's may be required to pay Hawks Prairie up to $5 million (the 'Cabela's Contract Payment') pursuant to Paragraph 8 of the Addendum to Real Estate Purchase and Sale Agreement . . . among other remedies . . . ." *Id.* Homestreet retained a "perfected security interest in all of Hawks Prairie's rights to payment . . . ." *Id.* The agreement also states that following the litigation, "Hawks Prairie will quit claim . . . all remaining rights, title and interest in the Cabela's Contract" to Homestreet "if any." *Id.*

But even assuming standing, Hawks Prairie fails to establish as a matter of law that they are entitled to recovery. Hawks Prairie argues that once Cabela's breached the radius restriction, all Hawks Prairie's duties dissolved.[1] Cabela's asserts that Hawks Prairie anticipatorily breached the agreement by declaring bankruptcy and selling the property, spoiling any possibility that it might construct the additional commercial space that it agreed to construct.

---

[1] *See* Tr. of Oral Arg., July 11, 2013, Dkt. #158 at 21 ("It doesn't mean that you still have to perform, it means no party has to perform, every party is then now to look to the remedies as dictated by the contracts.").

Under ¶ 7 of the agreement:

> In the event Seller has not commenced construction of 400,000 square feet of its planned commercial development by the end of the seventh (7th) year after Buyer's store opens, 800,000 square feet by the end of the eighth (8th) year after Buyer's store opens, and 1,000,000 square feet by the end of tenth (10th) year after Buyer's store opens, then, with respect to whichever remedy Seller may elect under Section 6, Seller shall credit Buyer an additional amount equal to (i) 1/6th the amount of the Five Million dollar contribution paid to Buyer pursuant to Section 5 herein and (ii) an amount equal to 1/6th of the fair market value of the Real Property, for each year that Seller fails to meet required square footage under construction.

(Kelsey Decl., Ex. 4, Dkt. #112-1.)  Paragraph 7 contemplates the situation where Hawks Prairie has failed to construct the planned development *and* Cabela's has breached the agreement (either by closing the Lacey store early or opening a competing store early).  In the case of such a mutual breach, "whichever remedy [Hawks Prairie] may elect under Section 6" is offset one-sixth each year that it fails to meet its construction obligation.

An anticipatory breach "occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time of performance." *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wash. 2d 881, 898 (1994).  It requires a "positive statement or action by the promisor indicating distinctly and unequivocally that he either will not or cannot substantially perform any of his contractual obligations." *Id.* (quoting *Olsen Media v. Energy Sciences, Inc.*, 32 Wash. App. 579, 585 (1982); *Lovric v. Dunatov*, 18 Wash. App. 274, 282 (1977)).

Although Cabela's has not affirmatively moved on the issue, there is at least an issue of fact as to whether Hawks Prairie anticipatorily breached the agreement by selling the property in bankruptcy.[2]  Plaintiff's counsel argues that "no one has a crystal ball" and Hawks Prairie could

---

[2] In its previous order, before ordering supplemental briefing, the Court concluded that Hawks Prairie had not anticipatorily breached the agreement by failing its construction obligations.  (Order at 16, Dkt. #138.)  Hawks Prairie had argued that it was entitled to $5 million and the fair market value of the land; Cabela's asserted that Hawks Prairie had anticipatorily breached the agreement.  The contract makes clear that Cabela's "sole remedy" was an "increase in the credits to be given [Cabela's] in the event [it] does not operate its store for the full (12) year period." *Id.*  The proper conclusion should have been that Hawks Prairie may have anticipatorily breached, but its breach was irrelevant—Cabela's had only one remedy: close its store early.  But in supplemental briefing, the parties highlighted (for the first time) the off-set damages provision of paragraph 7.  This provision changes the analysis as outlined above.

potentially partner with Wig Properties (the current owner of the property) to construct the space, but a reasonable factfinder could conclude that selling the property displays Hawks Prairie's "intent not to perform." *Id.* (citing *Lovric*, 18 Wash. App. at 282).

In sum, if the Memorandum of Agreements was transferred to Wig, Hawks Prairie has no standing. If the Memorandum was not transferred, Hawks Prairie's recovery is off-set by paragraph 7. In either case, the recovery is nothing.

These are sophisticated parties. They drafted a sophisticated, if imperfect, contract. This Court will not read exceptions into that contract or inject its own ideas of equity. Upon a simple, straightforward reading, the contract contemplates mutual breach, and the remedy to be applied. At this time, Cabela's has breached radius restriction, but Hawks Prairie has not established its right to judgment as a matter of law. Fed. R. Civ. P. 56. Hawks Prairie's Motion for Summary Judgment (Dkt. #104) is therefore **DENIED**.

Because Cabela's has not yet moved for summary judgment on the issue, the Court cannot, however, reach the issue of whether Hawks Prairie anticipatorily breached the agreement.

Hawks Prairie's Second Motion for Summary Judgment (Dkt. #131) is **STRICKEN** without prejudice as premature.

Dated this 30th day of July, 2013.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE