HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CABELA'S WHOLESALE INC,

            Plaintiff,

      v.

HAWKS PRAIRIE INVESTMENT LLC,

            Defendant.

CASE NO. C11-5973 RBL

ORDER

[Dkt. #s 277, 279 and 282 ]

THIS MATTER is before the court on the following Motions:  Hawks Prairie's Motion for a Supplemental Judgment (seeking prejudgment interest on the $5 million and the value of the land) [Dkt. #277]; Cabela's Motion for a Stay pending its Rule 59(e) Motion and an unsecured stay on appeal [Dkt. #279]; and Hawks Prairie's Motion to Seal the Willig Declaration in support of its fee application [Dkt. #282].

This case has been vigorously and ably litigated, and is now on appeal [Dkt. #296].  The monetary amounts involved are unusually large, but the issues presented are not novel or difficult, and do not warrant yet another detailed Order.

The Court concludes that this Order can be entered without the Ninth Circuit's approval and despite Cabela's Notice of Appeal under Fed. R. App. P  4(a)(4).  If and to the extent the

1    Ninth Circuit's approval *is* required for the entry of any aspect of this Order, the Court asks the

2    Ninth Circuit to REMAND the matter for that limited purpose under Fed. R. Civ. P. 62.1 and

3    Fed. R. App. P 12.1.

4    **A.  Part of the judgment amount was liquidated.**

5         Hawks Prairie seeks $2.8 million in total prejudgment interest on both aspects of its

6    judgment: the $5 million exclusivity fee and the "then value" of the land that it gave to Cabela's

7    for its Lacey store at the time of Cabela's breach ($8,624,541.66).  It claims that both amounts

8    are liquidated under Washington law.

9         Cabela's claims that neither amount is liquidated[1] and that, in any event, equity does not

10   permit the award of prejudgment interest on what it claims is a "windfall" in Hawks Prairie's

11   favor.

12        This latter argument is not compelling.  Every aspect of this case was fully explored, and

13   the Court held the parties to the terms of the agreement they struck—and to the consequences of

14   the decisions they made with their respective eyes wide open. To accept that the amount was a

15   windfall would be to concede that the hard-fought decision was simply wrong.  This Court does

16   not make that concession, and the Ninth Circuit will be the final arbiter in any event.

17        Under Washington law, a liquidated claim is "one where the amount of the claim is

18   determinable by a fixed standard, without reliance on opinion or discretion." *Douglas Northwest,*

19   *Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 690, 828 P.2d 565 (1992).

20        The $5 million re-payment is a liquidated amount under any definition of the term, and

21   Hawks Prairie is entitled to prejudgment interest on that amount under Washington law.  At 12%

22   _____

23        [1] Hawks Prairie notes, as did the Court, that this argument is directly contrary to its prior,
     rather adamant claims that the amounts were "unenforceable liquidated damages."  But the

24   prejudgment interest issue is not resolved by Cabela's characterization of it.

per year from the date of the breach (April 29, 2012) to the date of the judgment (February 4, 2014) (646 days), the amount of interest is **$1,061,917.81**.

The value of the land at the time of the breach—determined almost two years later, by a jury, using its collective wisdom and discretion, after a trial involving a host of competing expert opinions and skilled argument—is equally *un*-liquidated.  That trial, and that jury, was necessarily required to determine the value.

Hawks Prairie is not entitled to pre-judgment interest on the "value of land" component of its judgment.

The Motion for a Supplemental Judgment under Rule 59(e) is GRANTED to the extent of interest on the $5 million repayment.  It is DENIED as to prejudgment interest on the value of the land.

**B.  Cabela's is not entitled to an Unsecured Stay on Appeal.**

Cabela's asks the Court to stay enforcement of the judgment pending resolution of Hawks Prairies "Rule 59(e) Motion"—the Motion to Amend the Judgment to include pre-judgment interest—and to permit it to stay they judgment on appeal without posting a supersedeas bond.  It claims that as a $6 billion, publicly-traded[2] company, it "is good" for the judgment if its post-trial efforts are not successful, and one of its current Vice Presidents promises that it will pay in that event.

Hawks Prairie is perhaps justifiably skeptical.  It points out that Cabela's has fought the consequences of its contract—as a plaintiff—at every step, making every conceivable argument, and that there is no assurance that the VP can or will honor his commitment .  It also claims that the cost of a bond, while large, is not significant to a company Cabela's size.

---

[2] According to Google, Cabela's stock [CAB] is up *784.76%* in the five years ending today.  http://www.google.com/finance?q=NYSE:CAB

1    Cabela's has already appealed this Court's judgment [Dkt. #296].  The Court's earlier

2  stay [Dkt. #285], pending resolution of Dkt. #277, will expire with this Order.  The Court will

3  stay execution of the judgment for an additional ten days.  During this period Cabela's shall post

4  a supersedeas bond in the amount of the judgment plus interest in order to stay execution of the

5  judgment during its appeal of this Court's various Orders to the Ninth Circuit.

6  **C.  The Motion to Seal is Denied.**

7    Hawks Prairie asks the Court to seal the already-redacted Willig Declaration in support of

8  its $1 million plus fee application, arguing that the failure to do so will reveal its litigation

9  strategies to others.  But the Declaration has already been served on Cabela's in its redacted

10  form.  Hawks Prairie attorney, Willig, seeks to more generally protect his trial strategies and

11  work product from future opponents, not from Cabela's in this case.  This Court does not

12  routinely (or even occasionally) seal declarations or billing statements in support of fee

13  applications.  It is theoretically possible that a inquisitive and industrious opponent could glean

14  useful insight into an attorney's litigation strategies by reviewing his fee applications in other

15  cases, but that is true of any attorney in any case.  The redactions offer ample protection against

16  this remote possibility, and there is no basis for sealing the Declaration under LCR 5(g).

17    The Motion to Seal is DENIED. The Court will address the substance of Hawks Prairie's

18  fee application in a separate Order.

19    IT IS SO ORDERED.

20    Dated this 21ST day of March, 2014.

21

22    _____

23    RONALD B. LEIGHTON
    UNITED STATES DISTRICT JUDGE

24

ORDER - 4