HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CABELA'S WHOLESALE INC, <br><br> Plaintiff, <br><br> v. <br><br> HAWKS PRAIRIE INVESTMENT LLC, <br><br> Defendant. | CASE NO. C11-5973 RBL <br><br> ORDER ON HAWKS PRAIRIE'S MOTION FOR ATTORNEYS' FEES AND COSTS <br><br> [DKT. # 281] |

THIS MATTER is before the Court on Hawks Prairie's Motion for Attorneys' Fees and Costs as the prevailing party under the parties' contract. [Dkt. #281] Hawks Prairie seeks $1,020,322.67 in fees and costs[1] through the date of the Motion.

Cabela's opposes the Motion, arguing that it should be deferred pending the resolution of its appeal, in the interest of judicial economy. It also argues that the fee request is excessive, reflects time that could not or should not have been spent (at least not at the rates requested), and should generally be reduced by one third. Cabela's also opposes the cost application, claiming it is not properly supported.

---

[1] Page 156 of Exhibit A to the Willig Declaration [Dkt. # 283] reveals that the sum includes $977,347.50 in fees and $42,975.07 in costs.

**A. Cabela's Appeal Does Not Warrant Deferral of This Motion.**

As an initial matter, Cabela's appeal of the verdict and this Court's various rulings does not warrant deferral of the fee application any more than any other appeal of any other verdict does. The court will not defer consideration of the Motion based only on Cabela's confidence in the success of its appeal.

**B. Attorneys' Fee Standard**

The first step in determining reasonable fees is to calculate the lodestar figure, by taking the number of hours reasonably expended on the litigation and multiplying it by the appropriate hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court should exclude overstaffed, redundant, or unnecessary time. *Id.* at 434. The Court must also consider the extent of Plaintiffs' success, as that is a "crucial factor" in determining an appropriate award. *Id.* at 440.

After determining the lodestar figure, the Court should then determine whether to adjust the lodestar figure up or down, based on factors not subsumed in the lodestar figure. These factors[2] were adopted in this Circuit by *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976). The applicability of the sixth (whether the fee is fixed or contingent) and tenth (the "undesirability" of the case) *Kerr* factors is doubtful after *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993)(fixed vs. contingent nature of fee is not to be considered). Additionally,

---

[2] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

1 numerous courts have subsequently held that the bulk of these factors are subsumed in the

2 lodestar calculation.  *See, for example, Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

3       In any event, the lodestar calculation is presumptively reasonable, and adjustments (up

4 are down) are appropriate only in rare and exceptional cases. *Id.*, *see also Pennsylvania v.*

5 *Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).

6       The lodestar calculation is similarly the starting point for determining a reasonable fee

7 under Washington law.  *Scott Fetzer v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990); *Absher*

8 *Constr. v. Kent Sch. Dist. No. 415*, 79 Wash. App. 841, 847, 917 P.2d 1086 (1995).

9 Washington's RPC 1.5 lists factors to be considered in evaluating the reasonableness of an

10 attorney's fee:

      (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

      (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

      (3) the fee customarily charged in the locality for similar legal services;

      (4) the amount involved and the results obtained;

      (5) the time limitations imposed by the client or by the circumstances;

      (6) the nature and length of the professional relationship with the client; and

      (7) the experience, reputation, and ability of the lawyer or lawyers performing the services.

RPC 1.5(a) (1)-(7).  These factors are consistent with current *Kerr* factors, and Hawks Prairie asks the Court to evaluate its fee request with reference to them.

1    Cabela's does not dispute[3] theses standards, but does strenuously argue that the fees
2    requested are not reasonable.

3    **C.  Reasonable Hourly Rate.**

4    In determining hourly rates, the Court must look to the "prevailing market rates in the
5    relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003).  The rates of
6    comparable attorneys in the forum district are usually used.  *See Gates v. Deukmejian*, 987 F.2d
7    1392, 1405 (9th Cir. 1992).  In making its calculation, the Court should also consider the
8    experience, skill, and reputation of the attorney requesting fees.  *Schwarz v. Sec'y of Health &*
9    *Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  The Court may rely on its own knowledge and
10   familiarity with the legal market in setting a reasonable hourly rate.  *Ingram v. Oroudjian*, 647
11   F.3d 925, 928 (9th Cir. 2011).

12   Hawks Prairie seeks hourly rates for two primary and four additional attorneys, as well as
13   support staff, as follows:

| Attorney | Billing Initials | Hourly Rate |
|---|---|---|
| WILLIG | AMW | $375–$425 |
| BUTLER | CLB | $300–$325 |
| Shea | EHS | $375–$425 |
| Hacker | DEH | $375–$425 |
| Romero | MWR | $300–$325 |
| Cameron | DRC | $300–$325 |
| Paralegals |  | $150 |

---

[3] Cabela's does advocate a steep, general post-lodestar reduction, but its request is not tied to any of the other factors.

1    Cabela's does not dispute that these rates are reasonable, though it disputes the number of
2    hours spent and the attorneys who spent them. The Court takes judicial notice that the rates are
3    reasonable for the work performed.

**D. Reasonable Number of Hours.**

Cabela's raises four primary objections to the time Hawks Prairie's attorneys spent on this case: (1) Willig failed to appropriately delegate drafting and document review to Mr. Butler, who is has less experience and bills at a lower rate; (2) the attorneys generally over-billed on menial tasks, and, thus, can be presumed to have done so on each task; (3) the attorneys have requested compensation for time that it "could not have possibly expended;" and (4) the attorneys seek compensation for work that is not compensable (opposing Cabela's successful motion to compel, attorneys who added little or nothing, travel time at full rates, and paralegal rates for secretarial work).

Hawks Prairie concedes that some of the time was improperly claimed, but otherwise defends its delegation, its timekeeping, its travel rates, and the work of its paralegals and 'peripheral' attorneys.

'By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.' *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). With that in mind, however, in determining the reasonable number of hours, the Court nust exclude those hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

1.  <u>Cabela's favored delegation strategy is not controlling.</u>

Cabela's claims that Hawks Prairie's attorneys inappropriately delegated tasks drafting and document review to Willig (the higher rate attorney), thereby unnecessarily (and perhaps purposely) increasing the fees incurred. They argue that the tasks should have been performed by a less experienced, and less expensive, attorney:

> If attorneys are not encouraged to reduce costs by assigning research and drafting to associates with lower billing rates, they would be influenced by the motto: 'if someone else is buying lunch, why not order lobster bisque instead of grilled cheese?

Response at 5, *citing Mangino Penn. Tpk. Com'n,* No. 07-00370, 2009 WL 5184701, *4 (W.D. Pa. Dec. 22, 2009)  (quoting *Centurytel of Fairwater-Brandon-Alto, LLC v. Charter Fiberlink, LLC,* No. 08-CV-0470-SLC, 2009 WL 959553, at *3 (W.D. Wisc. Apr. 8, 2009)).

This argument is difficult to square with Cabela's overt confidence in its position throughout this litigation, up to and including the current motion.  It is difficult to imagine that Willig chose to do work he would normally have assigned to an associate in a prescient but underhanded attempt to *increase* the amount of Hawks Prairie's fees, so he could recover his time after prevailing in (what Cabela's claims was) a long-shot case.  When lunch was ordered, Cabela's was certain that Hawks Prairie was paying. Cabela's which has *seven*[4] attorneys of record in this case is not in a position to complain about who did the work on this case.

The briefing in this large and interesting case was excellent, on both sides.  The Court will not second guess the staffing strategy of the much smaller, prevailing firm.  Cabela's claim that the result would have been the same if a less experienced attorney handled more of it (and its

---

[4] Hawks Prairie counts six, but this Court's docket reflects that Cabela's has seven attorneys of record in this case Freedman, Lewis, Neu, Johnson, Hepburn, Harrison and Sancken. Some of the attorneys' roles are not known, but most have more experience than Butler and some more than Willig.  It can be fairly surmised that Cabela's spent more on this case than Hawks Prairie did.

corresponding proposed reduction to Butler's lower rate for drafting and document review) is rejected.

2. Cabela's suggestion of pervasive over-billing is not supported.

Cabela's seems to suggest that because some tasks appear to be over-billed—20 minutes to review a seven line notice, 15 to review another document with four—the Court can and should question whether Hawks Prairie's attorneys over-billed on everything, or, at least, that it should mine the bill (as an opponent might) for other, similar instances. The Court has reviewed the entire bill, and the small, cherry-picked examples do not support the conclusion that the case was over-billed in general.

3. Hawks Prairie concedes that some of the time sought could not have been spent as claimed.

Cabela's claims that Willig billed 7.1 hours ($2662.50) on a Motion that was actually filed the day before he claims he worked on it. From this, Cabela's deduces that Hawks Prairie might be intentionally misleading the Court, and that at the very least it demonstrates that the court must engage in the "mining" referenced above, and should defer that onerous task until (and if) the judgment is affirmed.

The latter claim is rejected for the reasons above. As to the former, Hawks Prairie concedes that the entry should not be awarded. The Court will not award the requested **$2662.50** for this entry.

4. Cabela's is entitled to an offset for the fees it was awarded on its motion to compel.

Cabela's claims that Hawks Prairie seeks 80 hours ($19,500) in fees incurred in opposing its motion to compel—a motion upon which Cabela's prevailed and was awarded $4053.15. It seeks both a reduction of the full amount of Hawks Prairie's request and an offset of its own, unpaid fee award.

1   Hawks Prairie points out that it is not clear how that 80 hour sum was calculated. It
2   claims that only 30.3 hours of its claimed fee[5] request related to the motion to compel (and that
3   the remaining hours did not, and in fact were not all billed during the pendency of that motion).
4   It also argues that while it lost the motion to compel, the documents ultimately produced were
5   not used and, of course, that it ultimately prevailed in "the war that Cabela's declared." It does
6   concede that the $4053.15 should be offset.

7   The Court will not award Hawks Prairie the fees it incurred in unsuccessfully opposing
8   the motion to compel, or the fees it incurred in opposing the resulting fee application. It does not
9   appear that 80 hours was spent on those tasks.

10  The Court will reduce the fee request by 50 hours at a blended rate of $300, or $15,000.
11  It will also credit Cabela's for the $4053.15 it was awarded and not paid, for a total reduction of
12  **$19,053.15** on this issue.

13      5.  Hawks Prairie's additional attorney time is reasonable.

14  Cabela's asks the Court to deny the claim for fees incurred by peripheral attorneys. It
15  claims that they did not add substantive value to the case but instead just reviewed the same
16  documents as the primary attorneys. This claim is not supportable.

17  It is hardly surprising that all of the attorneys in a six person firm involved in a multi-
18  million dollar case against a $6 billion company represented by a large team of lawyers from a
19  very large and well-respected law firm would work on the case. There is no showing, at all, that
20  the additional attorneys did not actually do any work, or add value to the case. This claimed
21  reduction is rejected.

---

24      [5] Some of this time is paralegal time.

    6. <u>Hawks Prairie's attorneys' travel time is reasonable.</u>

Cabela's argues that the travel time reflected on the fee request should be billed at a greatly reduced rate, perhaps $40 per hour. Hawks Prairie claims (and Cabela's cannot really dispute) that travel time was used productively, and warrants the attorneys' normal billable rates.

It is true that travel time may not always be as productive as "desk time" or trial time. But two attorneys traveling from Seattle to Tacoma, talking and thinking about the case while on the way to a hearing or trial is not akin to an attorney sleeping on an intercontinental flight. The Court would be surprised if Cabela's attorneys billed anything close to $40 per hour for traveling the same route, on the same days, for the same purposes. The Court will not reduce the travel time on the unsupported claim that it must have been unproductive.

    7. <u>Cabela's claim that Hawks Prairie is billing for "secretarial" time is not supported.</u>

Cabela's claims that a portion ($24,795) of the paralegal fees sought actually reflects "secretarial" time and should not be awarded. Hawks Prairie points out correctly that this claim and this calculation is not demonstrated in a way that the Court can meaningful evaluate it. Hawks Prairie's paralegal rates are reasonable, and the work claimed does not appear to the Court to be "secretarial" in nature. The requested reduction is rejected.

**E. Further Adjustment under the remaining *Kerr* Factors.**

The final step in determining a reasonable attorneys' fee is whether to enhance or reduce this lodestar figure based on the Court's evaluation of those *Kerr* factors not subsumed in the lodestar calculation. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The analysis above and the resulting lodestar amount take many of the relevant factors into account. On top of (and *because* of) the specific objections and reductions discussed above, Cabela's asks the Court to reduce the fee by an *additional one third*. There is literally no basis for this claim; it is not tied to any new argument or fact.

1     Hawks Prairie responds by seeking a fee enhancement, based on its success in the case.
2 This claim too is not really supported. No additional adjustment is warranted; the presumptively
3 reasonable lodestar calculation (as adjusted) is in fact reasonable.
4     After reviewing all of the factors, all of the entries, and Cabela's objections, the Court
5 concludes that no additional reduction or adjustment in the total fee award is warranted.

6 **F.  The Requested Costs are Reasonable and Properly Supported.**

7     Hawks Prairie seeks $42,975.07 in costs, as evidenced on its bill. Cabela's objection to
8 the award of any costs is that there are no invoices. It does not (and cannot) claim that Hawks
9 Prairie did not incur these (or any) costs, and it does not claim that the costs are unreasonable.
10     The costs are about three tenths of a percent of the total judgment. They are adequately
11 supported and are reasonable as a matter of law.

12                                             ***

13     Accordingly, the Court will award fees and costs in the following amounts:

| Requested Fees | $977,347.50 |
|---|---|
| Reductions | $ 19,053.15<br>$  2,662.50 |
| Total Fee award | $955,631.85 |
| Costs | $ 42,975.07 |
| **TOTAL** | **$998,606.92** |

1    The Clerk will enter a second supplemental judgment reflecting this award.

2    IT IS SO ORDERED.

3    Dated this 25th day of April, 2014.

                 RONALD B. LEIGHTON
                 UNITED STATES DISTRICT JUDGE