HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CABELA'S WHOLESALE INC.,<br><br>Plaintiff,<br><br>v.<br><br>HAWKS PRAIRIE INVESTMENT LLC,<br><br>Defendant. | CASE NO. C11-5973RBL<br><br>**REVISED** ORDER ON HAWKS PRAIRIE'S MOTION FOR ATTORNEYS' FEES AND COSTS |

THIS MATTER is before the Court on Hawks Prairie Investment LLC's Motion for Award of Attorneys' Fees and Costs Following Appeal [Dkt. #324]. The motion is brought following the Ninth Circuit Court of Appeals affirming this Court's final orders and Second Supplemental Judgment in the amount of $15,685,066.38 [Ninth Circuit Case No. 14-35157, Dkt. #44-1]. The Ninth Circuit also granted Hawks Prairie's motion requesting transfer of its attorneys' fees and costs on appeal to the District Court [Ninth Cir. Appeal Dkt. #50]. Cabela's opposes the fee request, claiming the fee totals are so excessive as to warrant denial of the fee request altogether.

**A. Attorneys' Fee Standard.**

The first step in determining reasonable fees is to calculate the lodestar figure, by taking the number of hours reasonably expended on the litigation and multiplying it by the appropriate

1  hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court should exclude

2  over-staffed, redundant, or unnecessary time. *Id.* at 434. The Court must also consider the extent

3  of Plaintiffs' success, as that is a "crucial factor" in determining an appropriate award. *Id.* at 440.

4  After determining the lodestar figure, the Court should then determine whether to adjust

5  the lodestar figure up or down, based on factors not subsumed in the lodestar figure. These

6  factors[1] were adopted in this Circuit by *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70

7  (9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976). The applicability of the sixth (whether the fee

8  is fixed or contingent) and tenth (the "undesirability " of the case) *Kerr* factors is doubtful after

9  City of Burlington v. Dague, 505 U.S. 557 (1992); see also Davis v. City & County of San

10 *Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345

11 ($9_{th}$ Cir. 1993)(fixed vs. contingent nature of fee is not to be considered). Additionally, numerous

12 courts have subsequently held that the bulk of these factors are subsumed in the

13 lodestar calculation. *See, for example, Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

14 In any event, the lodestar calculation is presumptively reasonable, and adjustments (up

15 are down) are appropriate only in rare and exceptional cases. *Id.*, *see also Pennsylvania v.*

16 *Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).

17 The lodestar calculation is similarly the starting point for determining a reasonable fee

18 under Washington law. *Scott Fetzer v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990); *Absher*

---

[1] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

*Constr. v. Kent Sch. Dist. No. 415*, 79 Wash. App. 841, 847, 917 P.2d 1086 (1995). Washington's RPC 1.5 lists factors to be considered in evaluating the reasonableness of an attorney's fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client; and
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services.

RPC 1.5(a) (1)-(7). These factors are consistent with current *Kerr* factors, and Hawks Prairie asks the Court to evaluate its fee request with reference to them.

**B.  Reasonable Number of Hours**

Cabela's does not challenge the rates charged by the individual lawyers. Instead they dispute i) the reasonableness of the hours charged on brief writing, reviewing the record and preparing for oral argument, ii) misallocation of time from junior time record-keepers to partners for such menial tasks, and iii) blocked bills.

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). With that in mind, however, in determining the reasonable number of hours, the Court must exclude those hours that are excessive, redundant, or otherwise unnecessary. *Hensley v.*

*Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

This litigation was contentious and hard fought. Cabela's litigation was to cede no argument without a fight. They fought on small issues and big issues in the Bankruptcy Court, in the District Court and in the Appellate Court. Cabela's was represented by two prestigious law firms devoting many lawyers into the battle. The Court estimates, with some confidence, that Cabela's attorneys' fees were appreciably higher than those of Hawks Prairie. That observation is not outcome determinative of the reasonableness of Hawks Prairie's fee application. It is persuasive evidence that Hawks Prairie and its counsel had its hands full in its effort to defend its judgment.

The judgment obtained was $15,685,066.38. That judgment was the sole asset of Hawks Prairie LLC. What was once a promising real estate development project was put in jeopardy by a crumbling national and regional economy. Hawks Prairie was put into bankruptcy court. Cabela's, under contract with Hawks Prairie, LLC, made its store at Hawks Prairie the one and only store in Western Washington for a period of years. Cabela's decided to build another store on the Tulalip Reservation within the prohibitive time period. Cabela's then initiated this litigation to seek a declaration that its promise to Hawks Prairie was unenforceable. Therein commenced the David and Goliath tussle between a weakened party determined to save value from the prior negotiations versus a wealthy, well-armed party equally determined to not perform its prior promise.

Against that backdrop, Hawks Prairie's lawyers spent 503.4 hours researching and writing its Ninth Circuit brief, 271.8 hours reviewing the record from both venues (trial court and bankruptcy court) and 224.2 hours preparing for argument. Cabela's may justifiably claim that

these efforts are excessive and over-kill. Perhaps Hawks Prairie could have won on all issues with a fraction of the effort, but that is the view looking through the rear view mirror. Understandably, the client would have been well served by a law firm that, under these circumstances, was never going to be outworked on a matter of vital importance. There is no reason to discount the effort put forth by the prevailing party here, likewise, there is no reason to criticize the extraordinary diligence of the senior lawyer in taking on some ministerial duties in an effort to apprise himself of every detail in the appeal process.

Finally, the objection to block billing by Hawks Prairie has some degree of merit. The Ninth Circuit has recognized that block billing can increase billed time by 10% to 30%. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). The practice of block billing is not optimum, but the claim that it automatically results in a 10% to 30% overcharge is simply unsupportable. Insurance companies, and many other clients, will not tolerate the practice, at all. But the claim that block billing cannot as a matter of law support a fee award without a flat deduction is not correct. Here, the nature of the billing records alone does not warrant any reduction.

**CONCLUSION**

For the foregoing reasons, Hawks Prairie Investment LLC's Motion for Award of Attorneys' Fees and Costs Following Appeal [Dkt. #324] is **GRANTED** in the amount of **$579,944.64**, which is the sum of attorneys' fees and costs billed to J. Scott Griffin Jr., Hawks Prairie Investment LLC **in two separate invoices dated** October 1, 2016 and the $7,590.00

REVISED ORDER ON HAWKS PRAIRIE'S
MOTION FOR ATTORNEYS' FEES AND COSTS
- 5

these efforts are excessive and over-kill. Perhaps Hawks Prairie could have won on all issues with a fraction of the effort, but that is the view looking through the rear view mirror. Understandably, the client would have been well served by a law firm that, under these circumstances, was never going to be outworked on a matter of vital importance. There is no reason to discount the effort put forth by the prevailing party here, likewise, there is no reason to criticize the extraordinary diligence of the senior lawyer in taking on some ministerial duties in an effort to apprise himself of every detail in the appeal process.

Finally, the objection to block billing by Hawks Prairie has some degree of merit. The Ninth Circuit has recognized that block billing can increase billed time by 10% to 30%. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). The practice of block billing is not optimum, but the claim that it automatically results in a 10% to 30% overcharge is simply unsupportable. Insurance companies, and many other clients, will not tolerate the practice, at all. But the claim that block billing cannot as a matter of law support a fee award without a flat deduction is not correct. Here, the nature of the billing records alone does not warrant any reduction.

**CONCLUSION**

For the foregoing reasons, Hawks Prairie Investment LLC's Motion for Award of Attorneys' Fees and Costs Following Appeal [Dkt. #324] is **GRANTED** in the amount of **$579,944.64**, which is the sum of attorneys' fees and costs billed to J. Scott Griffin Jr., Hawks Prairie Investment LLC **in two separate invoices dated** October 1, 2016 and the $7,590.00

1  summarized in the Declaration of Arnold M. Willig filed on October 28, 2016 [Dkt. #338].

2  Hawks Prairie Investment LLC's Motion for Payment of Bond [Dkt. #327] is **DENIED**.

3      Dated this 27th day of December, 2016.

                                                              Ronald B. Leighton
                                                              United States District Judge